# UNITED STATES DISTRICT COURT

### for the
### Southern District of Ohio

09 SEP 23 PM 3: 59

In the Matter of the Search of

*(Briefly describe the property to be searched*
*or identify the person by name and address)*

1514 Worthington Row Drive, Columbus, OH 43235

)
)
)
)
)

Case No. 2:19-mj-766

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspire to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, to wit: heroin. |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert Kukovec, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Sept 23, 2015

City and state: Columbus, Ohio

*Judge's signature*

Kimberly A. Jolson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

### (1514 Worthington Row Road, Columbus, OH 43235)

I, **Robert Kukovec**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.　　I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a Special Agent since April 2002, and I am currently assigned to the HSI office in Columbus, Ohio. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am currently assigned to a multi-jurisdictional narcotics task force in the central Ohio area, and I am cross-designated to investigate violations of Title 21 of the United States Code. Prior to my employment with HSI (and formally legacy U.S. Customs), I was employed as a police officer in the state of Ohio for approximately 8.5 years. My responsibilities and duties include the investigation and enforcement of federal laws and regulations related to customs and immigration violations, including but not limited to narcotics, financial crimes, fraud, and violations of the Immigration and Nationality Act.

2.　　The information set forth in this affidavit is based upon my knowledge, training, experience, and participation in investigations involving the smuggling, possession, distribution, and storage of narcotics and narcotics proceeds. This information is also based on the knowledge, training, experience, and investigations conducted by fellow law enforcement officers, which have reported to me either directly or indirectly. I believe this information to be

true and reliable. I know it is a violation of 21 U.S.C. § 846 for any person to conspire to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

3. The facts and information contained herein are based on my training and experience, that of other law enforcement personnel, surveillance operations, and from persons with knowledge regarding the relevant facts and witnesses. I believe this information to be true and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. In April of 2015, HSI Columbus and the Delaware County Drug Task Force (DCDTF) in Delaware, Ohio began investigating a Hispanic Drug Trafficking Organization (DTO) involved in the distribution and trafficking of large quantities of heroin in the central Ohio area. This DTO is also involved in the production and sale of fraudulent identification documents to illegal aliens and others, including resident alien cards, birth certificates, social security cards, and state identification cards. This DTO is comprised of mainly Mexican nationals illegally present in the United States. The scope of this DTO is extremely broad and has crossed into targets and heroin addicts from several prior and current investigations conducted not only by the DCDTF, but also by the Columbus Police Department Narcotics Unit (CPD Narcotics), DEA Columbus, HSI Seattle, FBI Columbus, ATF Columbus, and several other state and local law enforcement agencies throughout Ohio. Several members of this DTO have been identified through various means, such as physical surveillance, analysis of phone numbers/tolls, pen registers/phone pings, trash pulls, and the use of cooperating defendants and confidential sources. HSI Columbus and the DCDTF have also conducted several controlled purchases of heroin from this DTO in the past.

5.     During the course of this investigation, Diego CASTANEDA-GARCIA was identified as one of the leaders of this DTO. Diego CASTANEDA-GARCIA is currently residing at 1287 Cranwood Square South in Columbus, Ohio. Record checks on Diego CASTANEDA-GARCIA indicated he is a Mexican national illegally present in the U.S. who had been previously encountered and deported several times under various identities (Jorge Alonso, Sergio Castaneda-Garcia, Oscar Silva-Santiago, and Diego Castaneda-Garcia). Record checks on Diego CASTANEDA-GARCIA also revealed he has a lengthy criminal history in three different states (Ohio, Oregon, and California) for drug trafficking, reentry after deportation, vandalism, fleeing, evading police, and other traffic/driving related offenses. Diego CASTANEDA-GARCIA was even arrested by the DCDTF along with DEA Columbus and CPD Narcotics on October 8, 2009 for heroin trafficking in the central Ohio area under the alias of "Oscar Silva-Santiago."

6.     Diego CASTANEDA-GARCIA (aka "Mariachi" and "Neto") has been linked to multiple different heroin distribution "cells" operating in the central Ohio area since 2015. These heroin distribution cells typically consist of a "dispatcher" and at least one or more "runners." The "dispatcher" is the person who receives the calls from the drug users to order their heroin and then arranges the meet location between the drug users and one of the "runners" to conduct the heroin transaction. The "runners" are the ones who then meet and deliver the heroin to the drug users. Throughout the course of this investigation, Diego CASTANEDA-GARCIA has been linked to these various "dispatchers" and "runners," as well as other identified members of this DTO, through cellular phone calls as well as being observed by surveillance meeting with some of them. Investigators know the ex-girlfriend of Diego CASTANEDA-GARCIA and the mother of his child is Jennifer Esmeralda RODRIGUEZ-MARTINEZ. Diego CASTANEDA-GARCIA currently resides at 1287 Cranwood Square South in Columbus, Ohio and drives a

white 2016 Volkswagen Golf (Ohio registration HVU2366) registered to "Jose Alberto Serrano" (one of Diego CASTANEDA-GARCIA's aliases) at 1287 Cranwood Square South in Columbus, Ohio.

7.     The current "dispatcher" for this organization has been identified as Angel Moises CASTANEDA-GARCIA (aka "Moi"), who is the brother of Diego CASTANEDA-GARCIA. Angel CASTANEDA-GARCIA helps oversee and supervise activities of the "runners" and assists Diego CASTANEDA-GARCIA with running the heroin distribution cell by coordinating collection of the money from the drug sales every evening from the "runners" and inventorying the heroin sold or left over each day. Angel CASTANEDA-GARCIA is a Mexican national illegally present in the United States. Angel CASTANEDA-GARCIA also has a felony warrant out of Denver Colorado for a probation violation in reference to narcotics trafficking. Angel CASTANEDA-GARCIA currently resides at 2182 Dresden Street in Columbus, Ohio and drives a black 2014 Volkswagen Jetta (Ohio temporary registration J576285) registered to just "Maria" at 1227 Brookeview Avenue in Dayton, Ohio.

8.     One of the "runners" has been identified as Jose Narciso ACUNA-ZEPEDA (aka "Chucky"), who is a Mexican national illegally present in the United States. Jose ACUNA-ZEPEDA had been previously encountered by immigration authorities and deported to Mexico. Jose ACUNA-ZEPEDA has shared the same residence with Diego CASTANEDA-GARCIA for several months at 1287 Cranwood Square South in Columbus, Ohio and drives a grey 2011 Volkswagen Jetta (Ohio temporary registration J576284) registered to "Milton Orozco" at 7654 Yosemite Drive in Columbus, Ohio. The Ohio temporary registration for this vehicle is sequential to the black Volkswagen Jetta driven by Angel CASTANEDA-GARCIA, indicating they most likely were obtained at the same time.

9.     A second "runner" has been identified as Javier Eduardo ACUNA-ZEPEDA (aka "Lalo," "Guaranieve," and "Huijolo") through social media and Title III wire intercepts. Investigators know that Javier ACUNA-ZEPEDA was recently smuggled across the southwest border from Mexico into the United States to work for Diego CASTANEDA-GARCIA. Javier ACUNA-ZEPEDA is the brother of Jose ACUNA-ZEPEDA. Several Title III wire intercepts have been captured between Diego CASTANEDA-GARCIA and other unknown Hispanic males arranging the border crossing and transport of Javier ACUNA-ZEPEDA from Mexico to Columbus, Ohio. Javier ACUNA-ZEPEDA was first observed by investigators in the beginning of August 2019. During the course of surveillance, investigators have also seen Jose ACUNA-ZEPEDA driving Javier ACUNA-ZEPEDA around in vehicles used by this DTO meeting with drug users and conducting other DTO business as sort of a field training period before being allowed to work alone as a "runner" for the organization. Javier ACUNA-ZEPEDA is currently also living at 1287 Cranwood Square South in Columbus, Ohio with Diego CASTANEDA-GARCIA and Jose ACUNA-ZEPEDA, and drives a silver 2007 Honda Civic (Ohio registration HVA4250) registered to "Angel Moises Castaneda Garcia" at 2182 Dresden Street in Columbus, Ohio. This vehicle was previously utilized by Angel CASTANEDA-GARCIA before being turned over to Javier ACUNA-ZEPEDA.

10.     A previous "runner" was identified as Victor Daniel TORRES-LOPEZ, who is a Mexican national illegally present in the United States. Victor TORRES-LOPEZ was stopped by the Columbus Police Department on June 27, 2019 for a traffic violation as part of this investigation. Victor TORRES-LOPEZ was turned over to ICE Enforcement and Removal Operations (ERO) in Columbus, Ohio for being illegally present in the United States. An inventory search of Victor TORRES-LOPEZ's vehicle resulted in the discovery and seizure of just over 32 grams of heroin. On August 13, 2019, Victor TORRES-LOPEZ was indicted for

possession with intent to distribute heroin (21 USC 841) in the U.S. District Court in the Southern District of Ohio (Columbus) as part of this investigation, and was arrested and taken into federal custody on August 14, 2019. Victor TORRES-LOPEZ is currently incarcerated and awaiting trial in the U.S. District Court in the Southern District of Ohio (Columbus).

11.     Another previous "runner" was identified as Omar Fernando CHAVEZ-ANDRADE (aka "Contador"). Initially, Omar CHAVEZ-ANDRADE was working as a "drug packager" for this DTO (breaking down bulk heroin and re-packaging it into unit dose quantities for re-sale) before being demoted back to a "runner." Omar CHAVEZ-ANDRADE was routinely seen driving a white Nissan Altima that belonged to this DTO. Omar CHAVEZ-ANDRADE was constantly paranoid and thought he was being watched or followed by law enforcement, so he eventually left the DTO and went into hiding.

12.     HSI Columbus and the DCDTF identified several phone numbers being utilized by the "dispatcher" (Angel CASTANEDA-GARCIA) that the drug users call to order their heroin ("dispatch line"). Previously obtained court orders for pen registers and search warrants for precision location information (phone pings) on these various "dispatch line" phone numbers through the U.S. District Court in the Southern District of Ohio (Columbus), along with surveillance, were able to corroborate the "dispatcher" (Angel CASTANEDA-GARCIA) carrying this "dispatch line," and typically this phone changed every thirty days on average. This "dispatch line" phone for the "dispatcher" is turned on during the day when the DTO is selling heroin and turned off at night when the DTO is done selling heroin for the day. This "dispatch line" phone would typically be turned on in the morning around 1000 hours and then turned off in the evening around 2100 hours. This timeframe also coincides with the time the "runners" are away from their residence(s) each day delivering heroin.

13.     Surveillance of the "dispatcher" and "runners" revealed that they visit 1287 Cranwood Square South in Columbus, Ohio multiple times throughout the course of a normal day and this appeared to be a central operating location for this DTO. Intercepted phone calls and surveillance of the "runners" indicated some heroin was being stored at 1287 Cranwood Square South. Jose ACUNA-ZEPEDA and Javier ACUNA-ZEPEDA routinely leave this Cranwood Square South address and directly meet with drug users for short periods of time at designated apartment complex and retail parking lots throughout the central Ohio area. These meetings with drug users have been repeatedly documented by investigators performing surveillance over the course of the last several months.

14.     Several other locations have also been identified as being used by this DTO for different purposes. One of those locations is 1514 Worthington Row Drive in Columbus, Ohio. This location is currently being used to store the bulk heroin, and possibly currency and packaging materials according to phone calls intercepted between DTO members during the course of the Title III operation.

15.     On June 13, 2019, a phone call was intercepted between Diego CASTANEDA-GARCIA and Angel CASTANEDA-GARCIA. The two talked about the Worthington Row Road location possibly being sold to a third party and shown to a buyer the next day. They discussed getting their supply of heroin out of the apartment. Diego CASTANEDA-GARCIA and Jose ACUNA-ZEPEDA were observed by surveillance units arriving at 1514 Worthington Row Drive late that night and going through the front door. The two stayed for approximately 15 minutes before leaving the area and returning to Cranwood Square South. While they were there, a call was intercepted between Diego CASTANEDA-GARCIA and his mother in Mexico. During the call, there was background conversation between Diego CASTANEDA-GARCIA and

Jose ACUNA-ZEPEDA struggling to reach and retrieve the heroin from wherever they had it hidden based on your affiant's training and experience.

16.     On August 1, 2019, Diego CASTANEDA-GARCIA's white 2016 Volkswagen Golf (Ohio registration HVU2366) went to the area of 1514 Worthington Row based on electronic surveillance. At the same time, a phone call was intercepted between Diego CASTANEDA-GARCIA and a male in Mexico, Armando Rafael HERNANDEZ-GONZALEZ (aka "Toyoyo"). During the call, Diego CASTANEDA-GARCIA could be heard talking in the background to someone and stated "start stashing dude." Diego CASTANEDA-GARCIA's stop near the Worthington Row Road location was less than five minutes in length. Based on your affiant's training, experience, and knowledge of this investigation, it appeared that Diego CASTANEDA-GARCIA and another subject were at that location hiding their bulk heroin again.

17.     Based on electronic surveillance, several DTO member vehicles such as the silver 2007 Honda Civic (Ohio registration HVA4250) on August 13, 2019, being used by Angel CASTANEDA-GARCIA at the time, have made quick stops in the area of 1514 Worthington Row Road in Columbus, Ohio. These stops have coincided with intercepted phone calls made between DTO members where they discuss picking up heroin.

18.     On September 1, 2019, Diego CASTANEDA-GARCIA received an intercepted call from an unidentified Hispanic male from a California based telephone number. The phone call was in reference to a previously arranged shipment of heroin coming from Denver, Colorado to Columbus, Ohio. The unidentified Hispanic male advised Diego CASTANEDA-GARCIA that the drug courier was approximately 20 miles away and asked Diego CASTANEDA-GARCIA to provide an address to meet the drug courier. Diego CASTANEDA-GARCIA provided the address for the Turkey Hill gas station located at 6195 Cleveland Avenue in Columbus, Ohio as a meet location. Surveillance was established at the Turkey Hill Gas station.

Another phone call was intercepted from the unidentified Hispanic male from the California based phone number and he provided a vehicle description of the drug courier vehicle as a grey truck that has an attachment on the back that is used to tow vehicles. Surveillance units located the suspect vehicle, a grey 2017 Ford pickup truck (California registration RAEXMPT), parked in the McDonald's parking lot adjacent to the Turkey Hill gas station. A short time later, Diego CASTANEDA-GARCIA was seen driving through the McDonalds parking lot in his white 2016 Volkswagen Golf (Ohio registration HVU2366) and made contact with the driver of the truck, later identified as Michael Phillip UCCELLO from California. A short time later, Michael UCCELLO followed Diego CASTANEDA-GARCIA from the McDonald's parking lot through the neighborhood south of the Turkey Hill gas station. Surveillance units lost contact with Diego CASTANEDA-GARCIA and Michael UCCELLO as they drove through a nearby neighborhood due to the difficulty of maintaining discreet surveillance in the area because there is no way to go unnoticed due to the very tight proximity of the neighborhood and nowhere to discretely hide, but remained in the area attempting to locate both subjects. Shortly after driving into the neighborhood, a phone call was intercepted between Diego CASTANEDA-GARCIA and Jose ACUNA-ZEPEDA where Diego CASTANEDA-GARCIA told Jose ACUNA-ZEPEDA that he already picked up the product. While the exchange was occurring, surveillance units observed both Angel CASTANEDA-GARCIA and Jose ACUNA-ZEPEDA in the area performing counter-surveillance. Both individuals sat in fixed locations observing the area while Diego CASTANEDA-GARCIA and Michael UCCELLO initially met at the McDonald's parking lot. When Diego CASTANEDA-GARCIA and Michael UCCELLO began to move, Jose ACUNA-ZEPEDA and Angel CASTANEDA-GARCIA loosely followed, observed, and parked in locations where they could see any vehicles following Diego CASTANEDA-GARCIA. Based on your affiant's knowledge, training, and experience, these techniques are used by DTO

members to identify police surveillance and ensure the safety of drug transactions. After the exchange occurred, another phone call was intercepted between Diego CASTANEDA-GARCIA and Jose ACUNA-ZEPEDA where Diego CASTANEDA-GARCIA complained about the way the drugs were packaged and ordered Jose ACUNA-ZEPEDA to go to Walmart and purchase some trash bags, so they could repackage the drugs. Through physical and electronic surveillance, investigators observed several of the DTO members drive in circular routes before finally returning to 1287 Cranwood Square South in Columbus, Ohio. Diego CASTANEDA-GARCIA was observed driving through a nearby apartment complex and turned off his headlights after driving by an investigator operating an unmarked police vehicle. Diego CASTANEDA-GARCIA eventually returned back to 1287 Cranwood Square South and met up with the rest of the DTO members already there.

19.    Shortly after the meet, surveillance units were able to relocate Michael UCCELLO in the grey 2017 Ford pickup truck (California registration RAEXMPT) travelling westbound on I-70 near Hilliard Rome Road heading out of town. Surveillance units followed Michael UCCELLO west on I-70 until the vehicle was intercepted by a marked Ohio State Highway Patrol (OSP) unit. OSP stopped the vehicle for a traffic violation in the area of mile marker 75. The OSP Trooper identified Michael UCCELLO as the driver and his passenger as Serena ESCALANTE. A probable cause search of the vehicle after a police canine alerted to the presence of an odor of narcotics coming from the vehicle revealed an unknown amount of U.S. currency and a small amount of marijuana. OSP seized the marijuana and released both Michael UCCELLO and Serena ESCALANTE pending future indictment. The information was also forwarded to the HSI Indianapolis bulk cash task force who ended up locating them the next day (September 2, 2019) near Indianapolis, Indiana after they spent the night at a hotel near there.

They were stopped once again and a probable cause search resulted in the discovery and seizure of $13,360 in U.S. currency.

20.      On September 1, 2019 toward the end of the night, a phone call was intercepted between Diego CASTANEDA-GARCIA and Armando HERNANDEZ-GONZALEZ (aka "Toyoyo") in Mexico.    Diego CASTANEDA-GARCIA advised Armando HERNANDEZ-GONZALEZ he is going to take all the "potatoes" to the other apartment.    Investigators know this DTO refer to heroin as "potatoes" and/or "food" based on previously intercepted phone calls. Investigators had also previously identified 1514 Worthington Row Road in Columbus, Ohio as a location where DTO members have stored larger quantities of heroin in the past after receiving deliveries.    Investigators continued to monitor the movements of the DTO members that night and noticed the grey 2011 Volkswagen Jetta (Ohio temporary registration J576284) driven by Jose ACUNA-ZEPEDA made a brief stop in the area of 1514 Worthington Row Drive shortly after this above mentioned phone call. The stop was less than five minutes in duration.

21.      On September 12, 2019, phone calls were intercepted between Diego CASTANEDA-GARCIA and an unidentified Hispanic male from a California based telephone number (same caller from the heroin delivery on September 1, 2019 listed above).    Diego CASTANEDA-GARCIA and the unidentified Hispanic male were discussing the delivery of "food" (code word used by this organization for heroin) to occur that day.  Diego CASTANEDA-GARCIA initially set a meeting place of 3100 Old Providence Lane in Columbus, Ohio for this transaction to take place.    This address was located in an apartment complex that this DTO routinely used to conduct heroin transactions with drug users.    Investigators began surveillance in that area. Diego CASTANEDA-GARCIA then received another phone call advising the courier was running behind and was possibly arriving on a motorcycle.    A short time later, the unidentified Hispanic male calling from the California based phone number advised Diego

CASTANEDA-GARCIA the courier was having trouble with his cellular phone and asked Diego CASTANEDA-GARCIA if he could meet the courier at the Apple Store located at 4210 The Strand in Columbus Ohio at the Easton Mall.

22.     Investigators then traveled to that location and established surveillance. Investigators also monitored the area with the assistance of Easton Security who had access to dozens of cameras which covered the majority of the area. Surveillance units observed the white 2016 Volkswagen Golf (Ohio registration HVU2366) utilized by Diego CASTANEDA-GARCIA parked in a parking space directly across the street from the Apple Store. Investigators observed Diego CASTANEDA-GARCIA and Angel CASTANEDA-GARCIA exit the white Volkswagen Golf. Angel CASTANEDA-GARCIA was carrying a small orange gift bag with blue straps.     Jose ACUNA-ZEPEDA also eventually met up with Diego and Angel CASTANEDA-GARCIA near the Apple Store. Eventually, a black male, later identified as Delander Edward MOORE JR. from California, met with Diego CASTANEDA-GARCIA, Angel CASTANEDA-GARCIA, and Jose ACUNA-ZEPEDA on a bench across the street from the Apple Store. Delander MOORE JR. was observed carrying a red and black drawstring backpack. After meeting up together, all four walked over to the white Volkswagen Golf parked nearby. Diego CASTANEDA-GARCIA, Angel CASTANEDA-GARCIA, and Jose ACUNA-ZEPEDA got into the vehicle. Delander MOORE JR. leaned into the rear passenger seat and surveillance observed Delander MOORE JR take off the backpack and place it on the rear passenger seat. Delander MOORE JR. appeared to open the bag and show the contents to Diego CASTANEDA-GARCIA. Delander MOORE JR. was then observed stepping away from the white Volkswagen Golf without the backpack and was now carrying the orange gift bag that Angel CASTANEDA-GARCIA was seen carrying prior to the meet.     Diego CASTANEDA-GARCIA, Angel CASTANEDA-GARCIA, and Jose ACUNA-ZEPEDA then separated from Delander MOORE

JR. and drove away in the white Volkswagen Golf. Jose ACUNA-ZEPEDA was then observed being dropped off at his vehicle, the grey 2011 Volkswagen Jetta (Ohio temporary registration J576284), which was parked near the Mongolian BBQ restaurant at Easton Mall. Surveillance units observed Jose ACUNA-ZEPEDA exit the white Volkswagen Golf carrying the red and black backpack that was previously observed being carried by Delander MOORE JR. Jose ACUNA-ZEPEDA then got into his grey Volkswagen Jetta, appeared to place the backpack under the driver's seat, and left the area in the grey Volkswagen Jetta, while Diego CASTANEDA-GARCIA and Angel CASTANEDA-GARCIA were observed leaving in the white Volkswagen Golf. Surveillance units followed Jose ACUNA-ZEPEDA in the grey Volkswagen Jetta to 1287 Cranwood Square South in Columbus, Ohio.

23.     Investigators also maintained surveillance on Delander MOORE JR., who was observed going in and out of several locations at Easton Mall while continuing to carry the orange gift bag. After approximately 90 minutes, Delander MOORE JR. was observed walking towards a maroon Harley Davidson motorcycle with no visible registration. The motorcycle was parked on the west side of the Nordstrom store at Easton Mall and only had a dealership placard displayed for a Harley Davidson dealership in California. Delander MOORE JR. placed the orange gift bag into the rear storage compartment of the motorcycle. Delander MOORE JR. left the area on the maroon Harley Davidson motorcycle and was followed by surveillance units south on I-270 and then south on I-71 heading towards Cincinnati, Ohio. After coordinating with the Ohio State Highway Patrol (OSP), OSP criminal patrol units were able to get the motorcycle stopped for several traffic violations on I-71 southbound between mile marker 38 and 39 near Lebanon, Ohio. At that time, OSP units positively identified Delander MOORE JR. and located the motorcycle registration (California registration 19M2094- expired) inside a storage compartment on the motorcycle. Delander MOORE JR. was interviewed and provided

conflicting and nonsensical statements regarding his travel activities. An OSP canine conducted an open air sniff around Delander MOORE JR.'s motorcycle and gave a positive alert to the presence of an odor of narcotics coming from the motorcycle. A probable cause search yielded approximately $9,500 in assorted U.S. currency, which was located both on Delander MOORE JR. and inside the rear storage compartment of the motorcycle inside the orange gift bag Delander MOORE JR. received from the DTO members, which contained the majority of the total amount of currency located. Delander MOORE JR. abandoned the money and signed an abandonment form. The U.S. currency was then seized by HSI Columbus as part of this investigation as narcotics proceeds. Delander MOORE JR. was eventually released pending a future indictment. Based on previously intercepted Title III wire intercepts, investigators have learned that Diego CASTANEDA-GARCIA pays drug couriers a delivery fee of typically $1,500 to $2,000 per kilogram of heroin delivered. Also, a previous Title III intercepted call on Diego CASTANEDA-GARCIA's phone earlier that day indicated he was supposed to initially provide $13,500 to the drug courier for the heroin delivery that day. However, the boss in Mexico ordered Diego CASTANEDA-GARCIA to only provide the courier $9,500, and sent the remaining $4,000 straight to Mexico instead.

24.     On September 16, a phone call was intercepted between Diego CASTANEDA-GARCIA and Armando HERNANDEZ-GONZALEZ (aka "Toyoyo") in Mexico. Diego CASTANEDA-GARCIA advised Armando HERNANDEZ-GONZALEZ that he and Angel CASTANEDA-GARCIA were currently stashing packages and that they moved the bulk heroin from the September 12, 2019 delivery to a different apartment for safe-keeping. Diego CASTANEDA-GARCIA also advised Armando HERNANDEZ-GONZALEZ that the apartment they were at was empty and he needed to buy some furniture for it. Armando HERNANDEZ-GONZALEZ advised Diego CASTANEDA-GARCIA that it was better to stash the packages so

they were not out in the open. Armando HERNANDEZ-GONZALEZ also stated to Diego CASTANEDA-GARCIA that the "dudes" search for everything quickly and to make them "struggle" because it was their job. Diego CASTANEDA-GARCIA also discussed the amount of packages they were stashing and he advised Armando HERNANDEZ-GONZALEZ they had enough "food" (code word for heroin) for two months. During this phone conversation between Diego CASTANEDA-GARCIA and Armando HERNANDEZ-GONZALEZ, investigators noticed that the black 2014 Volkswagen Jetta (Ohio temporary registration J576285) being driven by Angel CASTANEDA-GARCIA was parked near 1514 Worthington Row Drive in Columbus, Ohio while this phone call was occurring. Based on your affiant's knowledge, training, and experience, this DTO commonly refers to heroin as "food" and based on the context of the phone call, investigators believe the two were talking about law enforcement when they referred to "dudes" who may be searching the apartment for drugs.

25.    Based upon previous Title III wire intercepts, investigators know that Diego CASTANEDA-GARCIA recently contacted American Electric Power (AEP) to re-activate the electric service at 1514 Worthington Row Drive using a fictitious name. Investigators discovered the electricity for 1514 Worthington Row Drive was set up in the name of a "Jose Garcia Lopez" using the social security number of an individual who died in 1990. Additionally, the relative contact provided by the individual who set up the account was listed as "Jose Alberto Serrano Garcia" with a provided phone number of 614-928-7360.    Investigators know Diego CASTANEDA-GARCIA's white 2016 Volkswagen Golf (Ohio registration HVU2366) was registered under the name "Jose Alberto Serrano" (an alias of Diego CASTANEDA-GARCIA) and he had previously used the phone number 614-928-7360 earlier in 2019. Investigators have known about this apartment at 1514 Worthington Row Drive for several months and have observed either Diego CASTANEDA-GARCIA, Angel CASTANEDA-GARCIA, and/or Jose

ACUNA-ZEPEDA through either physical or technical surveillance go to this apartment on numerous occasions.

26.     DTO members continue to use 1514 Worthington Row Drive in Columbus, Ohio as a "stash house" to store drugs and/or money and packaging materials. DTO members rarely travel to this location and have only referred to this location during intercepted phone calls as a place they store drugs. Based on all the facts and circumstances outlined in this affidavit, your affiant believes 1514 Worthington Row Drive in Columbus, Ohio is being used by this criminal organization to manufacture, distribute, or dispense narcotics and/or narcotics proceeds. Furthermore, your affiant believes other evidence of such crimes will be located at 1514 Worthington Row Drive.

27.     Throughout this investigation, investigators have not observed, or otherwise learned of, the targets going to work or having any type of legitimate employment to support themselves. Throughout this investigation, investigators observed all of the targets identified in this Affidavit meeting with other people or vehicles in a manner that your affiant knows from training and experience to be consistent with drug transactions.

28.     Throughout this investigation, surveillance units noted on numerous occasions Diego CASTANEDA-GARCIA, the "dispatcher," and "runners" utilizing their cellular telephones while conducting their drug trafficking business. Their phone numbers have also been changed several times during the course of this investigation. Based on your affiant's training and experience in narcotics investigations, narcotics traffickers typically rely on their cellular phones to conduct their drug business and change phones regularly to avoid detection or monitoring.

29.     Based on the facts in this Affidavit as well as your affiant's training and experience and the training and experience of other law enforcement officers involved in this investigation, your affiant is aware of the following:

     A. Drug traffickers sometimes place utilities in names other than their own to avoid detection by law enforcement and other government agencies. Even though these residences are in other person's names, the drug dealer continues to exercise dominion and control over them;

     B. Drug traffickers commonly maintain multiple premises from which their illegal business is conducted. Drug traffickers also store narcotics, narcotics proceeds and records relating to the trafficking of narcotics at their residences and/or businesses or vehicles and the residences and/or businesses or vehicles of their relatives and co-conspirators;

     C. Drug traffickers must maintain large amounts of U.S. currency on hand in order to maintain and finance their ongoing narcotics business;

     D. Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, passports, and other papers relating to the transportation, importation, ordering, sale, and distribution of controlled substances. Drug traffickers commonly "front" (provide controlled substances on consignment) to their clients. The aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the drug traffickers have ready access to them, such as in their residences or vehicles;

     E. Drug traffickers often secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences or vehicles for ready access and to conceal them from law enforcement authorities;

F. Drug traffickers conceal within their residences, businesses, or vehicles caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, automobile titles and other items of value and/or proceeds of drug sales and evidence of financing, secreting, or spending large sums of money acquired from drug trafficking activities;

G. Drug traffickers who amass large amounts of proceeds from the sale of drugs often attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize domestic and foreign banks and/or financial institutions and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, "shell" corporations, and business "fronts";

H. Drug traffickers commonly maintain addresses, or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their co-conspirators;

I. During drug transactions, traffickers take, or cause to be taken, photographs of themselves, their associates, their property, and their product. Drug traffickers usually maintain these photographs at their residences or in their vehicles;

J. Drug traffickers commonly use electronic equipment to aid them in their drug trafficking activities. This equipment includes, but is not limited to, digital display pagers, cellular telephones, speed dialers, electronic telephone books, electronic date books, computers, computer memory disks, money counters, electronic surveillance equipment, eavesdropping equipment, police radio scanners, and portable communication devices;

K.  Drug traffickers commonly use substances, including but not limited to adulterants, diluents, packaging, plastic bags, manila envelopes, strainers, measuring spoons, scales, grinders, and weights, in the course of their drug trafficking activities;

L.  Drug traffickers often utilize firearms and other weapons to facilitate their illegal activities.  For this reason, drug traffickers regularly carry weapons or store them in their residences or vehicles.

### CONCLUSION

30.     Based on the facts set forth in this Affidavit, there is probable cause to believe that Diego CASTANEDA-GARCIA, the "dispatcher," and "runners," along with others known and unknown, are engaged in a conspiracy to distribute, or possess with intent to distribute, a controlled substance (heroin), in the Southern District of Ohio, in violation of 21 U.S.C. § 846. In addition, there is probable cause to believe that evidence of these offenses, as described in Attachment B, will be found at the location listed in Attachment A.

Respectfully submitted,

Robert Kukovec
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this 23rd day of Sept, 2019

_____
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## DESCRIPTION OF PREMISES AND PROPERTY TO BE SEARCHED

The property to be searched is **1514 Worthington Row Drive Columbus, OH 43235** along with the curtilage of the property, any detached outbuildings, detached garages, or vehicles on the property. The premises is described as one unit of a two story multi-family apartment building in Franklin County, Ohio. The structure is comprised of a light tan colored siding and brown brick with white trim, brown shingled roof, and a red front door. The dark colored numerals "1514" are displayed above the front door. This multi-family apartment building sits on the east side of Worthington Row Drive with the front door facing southeast.

# ATTACHMENT B

## ITEMS TO BE SEIZED

**All items found at the locations described in Attachment A that relate to violations of 21 U.S.C. § 846 including:**

1. Controlled substances, materials that drugs were shipped in and/or used to package for sale, drug paraphernalia used to administer or ingest controlled substances, and equipment related to the sale, manufacture, processing and storage of controlled substances, including but not limited to all cooking equipment, chemicals, packaging materials, scales, presses, adulterants, diluents, strainers, measuring spoons, scales, grinders, etc.;

2. Log books, records, payment receipts, notes, and/or customer lists, ledgers and other papers relating to the transportation, ordering, purchasing, processing, storage and distribution of controlled substances, including all records of income and expenses, for the past five years;

3. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and other items relating to travel to obtain and distribute narcotics and narcotics proceeds for the past five years. Evidence of such travel is often times maintained by narcotics traffickers in the form of airline receipts, bus tickets, automobile rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, logs, travel agency vouchers, notes, cellular telephone tolls and records of long distance telephone calls;

4. Books, records, invoices, receipts, records of real estate transactions, auto titles, financial

statements, bank statements, cancelled checks, deposit tickets, passbooks, money drafts, withdrawal slips, certificates of deposit, letters of credit, loan and mortgage records, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money. These records should include both records of drug trafficking, manufacturing of fraudulent identification documents, and legitimate business operations for the past five years;

5. Electronic equipment, such as telephone answering machines, telephone caller identification boxes, video and audiocassette tapes, pagers (digital display beepers), and any stored electronic communications contained therein;

6. Cellular telephone(s) and/or portable cellular telephone(s) and any stored electronic communications contained therein;

7. United States currency, precious metals, jewelry, gold coins, and financial instruments, including, but not limited to, stocks and bonds;

8. Photographs of co-conspirators, assets and/or narcotics, including still photos, negatives, video-tapes, films, slides, undeveloped film and the contents therein;

9. Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, and fax numbers of co-conspirators, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with

whom a financial relationship exists;

10. Indicia of occupancy, residency, rental and/or ownership of the premises described above or vehicles located thereon, including, but not limited to, utility and telephone bills, cancelled envelopes, keys, deeds, purchase lease agreements, land contracts, titles and vehicle registrations;

11. The opening, search and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore may be maintained;

12. Any and all computers and information and/or data stored in the form of magnetic or electronic coding on computer media, on media capable of being read by a computer, or other recorded media. This includes but it is not limited to computer software, software manuals, tapes, CD's, diskettes, stored electronic communications, taped messages, electronic date/memo minders, address books, word processors, passwords, backup storage devices, audio tape and the contents therein, containing the related information generated by the aforementioned electronic equipment;

13. Firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons and any record or receipt pertaining to firearms and ammunition;

14. Any other items which constitute evidence of a violation of 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute a controlled substance).